IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RAQUELL HATCHER<br>1506 Rancocas Avenue<br>Burlington Township, NJ 08016<br><br>NIAMBI COOPER<br>39 Boxwood Lane<br>Willingboro, NJ 08046<br><br>        Plaintiffs,<br><br>        v.<br><br>FAMILY DOLLAR STORE, INC.<br>10401 Monroe Road<br>Mathews, NC 28105<br><br>        Defendant. | CIVIL ACTION<br><br>No. _____<br><br>JURY TRIAL DEMANDED |

## CIVIL ACTION COMPLAINT

Plaintiffs, by and through their undersigned counsel, hereby aver as follows:

### I. INTRODUCTION

1. This action has been initiated by Raquell Hatcher and Niambi Cooper (hereinafter referred to collectively as "Plaintiffs" unless indicated otherwise) for violations of the Conscientious Employee Protection Act ("CEPA") and for violations of 42 U.S.C. § 1981 and the New Jersey Law against Discrimination. As result of Defendant's unlawful actions described more fully herein, Plaintiffs seek damages also specified herein.

### II. JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of civil rights – 42 U.S.C. § 1981. This Court also independently has

jurisdiction pursuant to 28 U.S.C. § 1332 because Plaintiffs are separately seeking in excess of $75,000.00 exclusive of costs and interest and maintain diversity jurisdiction. Defendant's principal place of business is in North Carolina, and it is not incorporated within New Jersey. Both Plaintiffs are residents and citizens of the State of New Jersey.

3. This Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to the claim(s) within the Court's original jurisdiction that they form part of the same case or controversy.

4. This Court has personal jurisdiction over Defendant because Defendant, by systematically soliciting business in New Jersey and operating more than a dozen stores therein, has sufficient minimum contacts with this judicial district that the exercise of such jurisdiction comports with judicial notions of fair play and substantial justice, satisfying the standards set forth in *International Shoe Company v. Washington*, 326 U.S. 309 (1945), and its progeny.

5. Pursuant to 28 U.S.C. § 1391, venue is properly laid in this district because Defendant conducts substantial, systematic and continuous activity in New Jersey, all transactions and occurrences underlying the instant action occurred in this district, and Defendant is subject to personal jurisdiction in this district.

### III.     PARTIES

6. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7. Plaintiffs are adult individuals with addresses as set forth above.

8. Defendant is a Delaware corporation with its company headquarters at the above-captioned address. Defendant is engaged in the business of selling products to consumers through various mediums including but not limited to television and internet.

9. At all times relevant herein, Defendant acted by and through its agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## IV. FACTUAL BACKGROUND

10. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11. Both Plaintiffs worked for Defendant at the time of their separation from Defendant at its location on 1128 Sunset Road, Burlington, New Jersey 08016.

12. Plaintiff Cooper worked for Defendant as its store manager at the time of her separation and had been employed with Defendant for approximately 2 years.

13. Plaintiff Hatcher worked for Defendant as its assistant manager at the time of her separation and had been employed with Defendant for approximately 5 months.

14. Both Plaintiffs were terminated at the same time in May of 2007.

15. The reason given to Plaintiffs for their termination was that they permitted a non-employee of Defendant to assist with unloading store merchandise from a truck delivering goods purchased by Defendant.

16. The reason provided to Plaintiffs for their termination was pretextual.

17. Plaintiffs were employed at a store location that had inadequate maintenance and inspections concerning the structural stability of the building and concerning other health-related matters.

18. There were several leaks in the roof of the store location wherein Plaintiffs were employed.

19. Defendant failed to make any meaningful corrections to the roof, but instead, for an extended period of time chose to place buckets in areas to catch dripping water.

20. Sections of the ceiling and roof of the location wherein Plaintiffs were working bowed, fell to the floor, and visibly leaked even during store hours while customers were present within the building.

21. The store wherein Plaintiffs were employed was then shut down because of this issue and because the leaking water was causing lights to emit burning odors.

22. In addition to leaks and roofing problems, Defendant had visible mold accumulated in several areas of the building.

23. Defendant also had very serious sewage problems with its toilets, which caused feces to back up and spill throughout the bathrooms and other areas of the building.

24. After Defendant had repairs made to the roof of the building, Plaintiffs were instructed to clean and organize the sales floor to reopen the store.

25. Plaintiffs specifically requested specialized assistance from Defendant in cleaning the store because they were both getting very ill from working within the store because the clothing, floors, bathrooms and areas of the walls were either covered in mold or feces.

26. Plaintiffs had to clean the building themselves and used store-sold masks to try to limit the introduction of the odors and mold from entering their nasal cavities and bodies.

27. Plaintiffs were having physical problems, including but not limited to, rashes, burning eyes, and respiratory problems as a result of having to clean and organize the store.

28. Additionally, Plaintiffs were instructed to reopen the store despite that the bathrooms were still backing up and despite that feces had not been properly cleaned from within the bathrooms and surrounding areas.

29. The problem with the sewage backing up was so serious and so odorous that in order for Plaintiffs or other employees to open the bathrooms for use, they had to actually close the store.

30. After Plaintiffs sought assistance from Defendant's management and were not given any assistance and were ignored, both Plaintiffs contacted the Burlington Board of Health.

31. Plaintiffs contacted the Board of Health because they believed that Defendant's actions of having them work in said conditions, its intention to open the store in the face of known health hazards, and the stores general condition were all in violation of state and/or local regulations and/or laws.

32. Plaintiffs had sought help for the same issues and expressed opposition to the aforesaid conduct to Defendant's management before even resorting to having to call the Burlington Board of Health.

33. After contacting the Board of Health, an inspector/investigator from the agency appeared in person and met with both Plaintiffs about their complaints to said agency.

34. The inspector/investigator contacted Defendant's corporate human resources in the presence of both Plaintiffs via telephone and discussed several workplace concerns.

35. The inspector/investigator specifically told Defendant's corporate human resources the names of both Plaintiffs and the physical manifestations they were suffering as a result of working in the aforesaid conditions.

36. Defendant's human resources personnel then contacted both Plaintiffs, apologized, and assured them that their management would immediately be contacted about these problems.

37. Defendant was cited with a violation notice by the Burlington County Health Department on May 18, 2007 for violations of state and local laws and was given until May 21, 2007 to correct the violations.

38. Within less than 1 week after contacting and meeting with a representative of the Burlington Board of Health, both Plaintiffs were terminated.

39. As a result of Defendant's actions as described herein, both Plaintiffs have suffered damages, including but not limited to, lost wages, emotional distress, and other damages.

## COUNT I
## Conscientous Employee Protection Act ("CEPA")

40. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

41. Plaintiffs disclosed, objected to, and reported conduct as set forth *supra* that they reasonably believed was illegal, in violation of city and/or state regulations, and/or which contravened public policy.

42. Plaintiffs also refused to participate in the opening of Defendant's store location as instructed by contacting the Burlington Board of Health because they reasonably believed that workplace violations and hazards existed that should have lawfully prevented the opening.

43. Both Plaintiffs were terminated within less than 1 week of reporting, disclosing, and objecting to the aforesaid conduct.

44. These actions as aforesaid constitute violations of CEPA.

## COUNT II
## 42 U.S.C. § 1981
### (Racial Discrimination)

45. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

46. Both Plaintiffs believe and therefore aver that a motivating factor in their termination was their race.

47. Both Plaintiffs are African American.

48. Both Plaintiffs were treated disparately with respect the reasons for their termination and in the terms and conditions of their employment.

49. These actions as aforesaid constitute violations of 42 U.S.C. § 1981.

## COUNT III
## New Jersey Law against Discrimination ("NJ LAD")
### (Racial Discrimination)

50. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

51. Defendant's use of Plaintiff's race as a motivating factor in their termination also constitutes a violation of the NJ LAD.

## COUNT IV
## New Jersey Wage & Hour Law and New Jersey Wage Payment Act
### (This claim is only brought by Plaintiff Hatcher)

52. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

53. Plaintiff Hatcher was told when she was offered employment that she would be paid at a rate of $11.00 per hour.

54. Plaintiff Hatcher was under the impression throughout her employment that she would earn no less than $11.00 per hour for every hour she worked for Defendant.

55. Plaintiff Hatcher was only paid at a rate of $9.00 per hour during her employment with Defendant.

56. Plaintiff Hatcher regularly brought the issue of improper payment to the attention of management.

57. Plaintiff Cooper made many efforts to correct the improper payments to Plaintiff Hatcher but was unsuccessful.

58. Defendant therefore owes Plaintiff Hatcher and additional $2.00 for every hour she worked during the course and scope of her employment for Defendant.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to be permanently enjoined from discriminating or retaliating against Plaintiffs or any other present employees on any basis forbidden by state or federal law;

B. Defendant is to promulgate and adhere to a policy prohibiting discrimination and retaliation;

C. Defendant is to compensate Plaintiffs, reimburse Plaintiffs, and make Plaintiffs whole for any and all pay and benefits Plaintiffs would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority.

D. Plaintiffs are to be awarded actual damages, as well as damages for the pain, suffering, and humiliation caused by Defendant's actions;

E. Plaintiffs are to be awarded punitive damages as permitted by applicable law in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful,

deliberate, malicious, and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

 F. Plaintiffs are to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate;

 G. Plaintiffs are to be awarded the costs and expenses of this action and a reasonable attorney's fees as provided by applicable federal and state law; and

 H. Plaintiffs hereby demand a trial by jury.

Respectfully submitted,

**KARPF, KARPF & VIRANT**

By: _____
Ari Karpf, Esq.
3070 Bristol Pike
Bldg. 2, Ste. 231
Bensalem, PA 19020

Date: March 19, 2008